UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| PAULA R. KELLER,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:20-CV-465 JD |

## **OPINION AND ORDER**

Plaintiff Paula Keller appeals the denial of her claim for disability and disability insurance benefits. The ALJ had denied her claim after determining she was not disabled. The Court now remands the case to the Commissioner, finding that the ALJ committed reversible error by not properly analyzing certain medical opinions when determining her residual functional capacity.

**A.    Factual Background**

In March 2018, Ms. Keller applied for disability benefits, claiming that, on June 9, 2015, she had become unable to work due to her health conditions. (R. 181.) In her application, Ms. Keller alleged that she was disabled due to a variety of conditions, including intractable migraines, mild cervical and lumber degenerative disk disease, carpal tunnel, degenerative arthritis in her neck, degenerative bone disease in her shoulders, degenerative joint disease, asthma, depression, thyroid problems, and acid reflux. (R. 207.)

On December 18, 2019, after reviewing Ms. Keller's medical records and listening to her testimony at the hearing, the ALJ found that she was not disabled. (R. 27.) The ALJ determined that Ms. Keller suffers from multiple severe impairments, including degenerative disc disease of

the cervical and lumbar spine, small thoracic disc protrusion, migraines, and obesity. (R. 17.) However, the ALJ found that Ms. Keller's hypothyroidism, vitamin D deficiency, asthma, hyperlipidemia, right carpal tunnel syndrome with history of release, osteoarthritis of the right shoulder status post distal resection, mild left carpal tunnel syndrome, anxiety, and mild patellofemoral arthritis and patellar tendinitis of the right knee were all non-severe impairments. (R. 17.) The ALJ then found that none of these impairments or combination of impairments was equal in severity to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19.) After reviewing the record and listening to Ms. Keller at the hearing, the ALJ concluded that she had the residual functional capacity for light work as defined in 20 C.F.R § 404.1567(b), except for the following limitations:

> [S]he is never capable of climbing ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, and crawl, with frequent kneeling and crouching. She must avoid unprotected heights and dangerous moving machinery. She must avoid concentrated exposure to extreme heat and cold, humidity, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants. She should not work in very loud or loud environments. She should avoid work within close proximity to very bright lights or outside in the sunlight.

(R. 19–20.) Determining that Ms. Keller could perform past relevant work as a dispatcher, the ALJ found that Ms. Keller was not disabled. (R. 25.) Ms. Keller requested a review by the Appeals Council, which was denied on October 8, 2020, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. See 42 U.S.C. § 405(g).

**B.     Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

C.   **Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**D.     Discussion**

Ms. Keller argues that the ALJ's decision should be remanded for several reasons. She argues that: (1) the ALJ errored in her subjective symptom analysis; (2) the ALJ failed to properly consider medical opinion evidence; and (3) the ALJ errored in her listing analysis. The Court believes Ms. Keller's most convincing argument is that the ALJ errored in considering the medical opinion evidence and, therefore, the RFC was not supported and lacked an accurate and logical bridge. Since this argument is the most persuasive, the Court will not address the remaining arguments, which will either be moot or can be addressed on remand.

The ALJ considered the opinions of the consultative examiner, Dr. Stephen Parker; Ms. Keller's treating physicians, Dr. Hal Dickson and Dr. Helen Riegle; and DDS consultants Dr. Joshua Eskonen and Dr. J. Sands. (R. 24.) The ALJ found all of their opinions either unpersuasive or partially persuasive.

Under the regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ must explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). When considering the persuasiveness of any medical opinion, an ALJ must consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20. C.F.R. §§

404.1520(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately discuss supportability and consistency requires remand. *Tammy M. v. Saul*, No. 2:20-cv-285, 2021 WL 2451907, at *7-8 (N.D. Ind. June 16, 2021). The more consistent the medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). For a provider's opinion to be supportable, it must be based on "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

### (1) Doctor Parker's Opinion

Dr. Parker was a consultative examiner for the Social Security Administration who examined Ms. Keller on September 5, 2018. (R. 862.) After examining Ms. Keller, Dr. Parker concluded that she could maintain good balance with an assistance device and carrying weight of less than 10 pounds, could stand/walk for at least 2 hours in an 8-hour day, and could use the unoccupied upper extremity for lifting/carrying less than 10 pounds frequently or over 10 pounds occasionally. (R. 862-868.) Dr. Parker also opined that Ms. Keller had the functional capacity to walk 2 blocks, stand 10 minutes, climb 1 flight of stairs, and lift 15 pounds with both arms. (R. 863.) The ALJ correctly noted that Dr. Parker's conclusions were consistent with a finding that Ms. Keller could perform sedentary work as defined by § 404.1567(a), but not light work. (R. 25.) The ALJ then determined that Dr. Parker's opinion was "generally unpersuasive" since it

6

was largely inconsistent with other evidence. In support of this finding, the ALJ pointed to multiple pieces of objective medical evidence, writing:

> [Dr. Parker's] opinion is largely inconsistent with other evidence, including [Dr. Parker's] opinion that a cane was not medically necessary. The claimant had varying, though largely normal, physical exams. For example, the claimant had a cane at her September 2018 consultative exam and had a low normal gait. Then, in November 2018, a physical exam was unremarkable. Medical imaging showed degenerative disc disease, but right knee imaging was normal.

Even though the ALJ lists multiple pieces of evidence and asserts that they are inconsistent with Dr. Parker's opinion, the Court believes that this explanation fails to provide the necessary logical bridge.

Since Dr. Parker was the agency's independent examiner, the ALJ had to provide a good explanation for the unusual step of rejecting or discounting Dr. Parker's opinion. *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) ("[R]ejecting the opinion of an agency's doctor that supports a disability finding is unusual and can be expected to cause a reviewing court to take notice and await a good explanation."); *Gregory B. v. Kijakazi*, No. 120CV01906DLPJMS, 2022 WL 444066, at *8 (S.D. Ind. Feb. 11, 2022) (finding that remand was warranted where the ALJ did not provide a good explanation for rejecting the consultative expert's "findings related to [the claimant's] ability to follow through with work tasks and maintain general productivity standards [that] may potentially render [the claimant] disabled"). This is because an "agency doctor is unlikely . . . to exaggerate an applicant's disability as the applicant is not his patient and favoritism with applicants would not go down well with the agency." *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013). "Medical evidence may be discounted if it is internally consistent or inconsistent with other evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). However, the ALJ has failed to provide a

good explanation for how Dr. Parker's opinion is inconsistent, either internally or with other pieces of evidence.

The ALJ first identifies Dr. Parker's opinion as being inconsistent with a September 2018 consultative exam. However, the ALJ provides no explanation for how this examination is inconsistent with Dr. Parker's opinion, except to note that Ms. Keller "had a cane at her September 2018 examination and had a low normal gait." (R. 25.) This brief statement does not actually identify what portion of Dr. Parker's opinion the September 2018 examination conflicts with. The Court is especially at a loss since Dr. Parker was the one who conducted the September 2018 examination, tested Ms. Keller's movement with and without a cane, and found that Ms. Keller had a low normal ability to ambulate effectively. (R. 862–868.) Instead of putting forth evidence that conflicts with Dr. Parker's opinion, the ALJ has simply recited one particular test result found during Dr. Parker's exam. If there is any internal inconsistency in Dr. Parker's opinion, the ALJ has failed to adequately explain it.

The ALJ also asserts that Dr. Parker's opinion is inconsistent with an "unremarkable" physical exam from November 2018. (R. 25.) Again, the ALJ does not explain how this physical exam is inconsistent with Dr. Parker's opinion. In fact, the exam in November 2018 does not appear to have addressed Ms. Keller's gait, cane use, or musculoskeletal complaints, which is what Dr. Parker opined on. (R. 920.) Instead, the exam appears to have been a "follow-up [on Ms. Keller's complaints of] hyperlipemia, vitamin D deficiency, hypothyroidism, migraine headaches, and asthma." (R. 919.) Additionally, when asked about any muscular problems by the doctor during that November 2018 exam, Ms. Keller reported that she had chronic low back pain, which appears consistent with Dr. Parker's opinion. (R. 919.)

8

Lastly, in finding Dr. Parker's opinion unpersuasive, the ALJ notes that "medical imaging showed degenerative disc disease, but right knee imaging was normal." (R. 25.) The ALJ then concludes that "[t]hese findings are more consistent with a limitation to light work" than with the limitation for sedentary work suggested by Dr. Parker's opinion. (R. 25.) The Seventh Circuit has counseled that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 980 (7th Cir. 1995). For example, "[a]n ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). In finding that the right knee imaging is more consistent with the ALJ's conclusion about Ms. Keller's capacity for light work, the ALJ appears to be doing precisely what the Seventh Circuit has counseled against.

Accordingly, the Court finds that the ALJ errored by failing to provide a good explanation for discounting Dr. Parker's opinion.

### *(2) Doctor Riegle's Opinion*

Dr. Helen Riegle started treating Ms. Keller in 2014. In October 2015, Dr. Riegle opined that Ms. Keller could "return to work with . . . no raising arm above shoulders for prolonged periods, no reaching above shoulders, and no bending of neck." (R. 390.) The ALJ found this opinion unpersuasive for two reasons: (1) it predated the amended alleged onset date; and (2) it was inconsistent with other medical evidence.

First, the mere fact that the medical opinion predates the alleged onset date is not a permissible reason to discount the medical opinion. Even though they are not necessarily probative of disability, pre-onset opinions must be considered, along with all other evidence in

the record. *See Roddy v. Astrue*, 705 F .3d 631, 636 (7th Cir 2013) (holding that failure to address medical opinions rendered two years prior to the alleged onset date was reversible error); *Johnson v. Sullivan,* 915 F.3d 1575 at *3 (7th Cir.1990) (unpublished decision) ("Johnson is correct that the ALJ should consider the record as a whole, including pre-onset evidence (particularly relating to a degenerative condition) and post-onset evidence."). Additionally, this opinion appears to be relevant, as Ms. Keller's ability to move her neck, and raise her arms above her shoulder height, relates to her severe impairments for degenerative disc disease of the cervical and lumbar spine, small thoracic disc protrusion, and obesity.

    The ALJ does go on to explain he also found Dr. Riegle's October 2015 opinion generally unpersuasive because it was "somewhat inconsistent with other evidence," writing:

> For example, the claimant had a cane at her September 2018 consultative exam and had a low normal gait. Then, in November 2018, a physical exam was unremarkable. Medical imaging showed degenerative disc disease but right knee imaging was normal. These findings are more consistent with a limitation to light work.

(R. 24.) These inconsistencies are the exact same noted by the ALJ when she discounted Dr. Parker's opinion. The Court finds that the ALJ's explanation is deficient for similar reasons. As the Court noted above, the November 2018 exam did not address Ms. Keller's musculoskeletal complaints, such as her ability to turn her neck or her ability to lift her arms above her head, which is what Dr. Riegle opined on. (R. 920.) Additionally, it's unclear to the Court how Ms. Keller having a cane and a low normal gait at her September 2018 exam is inconsistent with Dr. Riegle's opinion that Keller could return to work with "no raising with her arm above shoulders for prolonged periods, no reaching above shoulders, and no bending of neck." (R. 390.)

    Accordingly, the Court finds that the ALJ errored by failing to provide a logical bridge for why she discounted Dr. Riegle's opinion.

### *(3) Doctors Joshua Eskonen and J. Sands*

Doctors Eskonen and Sands were agency consultants who both reviewed the medical record before providing their opinions. (R. 87; R. 101.) Both concluded that Ms. Keller was capable of medium work with postural limitations. (R. 88; R. 102.) The ALJ found that these opinions were generally unpersuasive because they were inconsistent with other evidence, writing:

> For example, the claimant had a cane at her September 2018 consultative exam and had a low normal gait. Then, in November 2018, a physical exam was unremarkable. Medical imaging showed degenerative disc disease but right knee imaging was normal. These findings are more consistent with a limitation to light work.

(R. 24.) This explanation is familiar. Indeed, it is the exact explanation that the ALJ provided when discounting Dr. Parker and Dr. Riegle's opinions. It's again unclear to the Court why having a low normal gait and cane at the 2018 consultative exam is inconsistent with a medium work capacity. Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *See* 20 C.F.R. § 404.1567. What part of having a cane or a low normal gait conflicts with this definition? If there is a conflict, the ALJ should have explained what the conflict was.

It's also curious that the ALJ finds this evidence inconsistent with opinions which support a more restrictive RFC than the ALJ's (which is what Dr. Parker and Dr. Riegle opined) and also opinions which support a less restrictive RFC than the ALJ's (which is what Dr. Eskonen and Dr. Sands opined). By finding each expert who opined on Ms. Keller's musculoskeletal limitations "generally unpersuasive," the ALJ has left an "evidentiary deficit" and impermissibly created her own physical RFC assessment, which appears to be a middle ground between the two sets of experts. *Suide v. Astrue*, 371 Fed. Appx. 684, 689–90 (7th Cir.

2010) (finding that an ALJ's lack of reliance on any physician opinion evidence created an evidentiary deficit); *Tammy M. v. Saul*, No. 2:20CV285, 2021 WL 2451907, at *8 (N.D. Ind. June 16, 2021) ("Although the ALJ is not required to adopt a specific physician opinion, by not adopting any medical opinion, the ALJ faced an evidentiary deficit."). This approach, constructing a middle ground without logically connecting the evidence to the RFC findings, is impermissible. *Adelina M. v. Kijakazi*, No. 19 C 5294, 2022 WL 375554, at *8 (N.D. Ill. Feb. 8, 2022) ("The ALJ cannot reject all the relevant medical RFC opinions and then construct a middle ground and come up with her own physical RFC assessment without logically connecting the evidence to the RFC findings.").

The Government contends there was sufficient evidence to support the ALJ's RFC, arguing that the ALJ properly relied on the "MRI showing no more than moderate abnormalities and the largely normal clinical exams." (DE 19 at 17–18.) However, without the ALJ giving weight to experts who opined on the claimant's physical functional limitations, it is unclear to the Court how the ALJ arrived at her RFC. The ALJ repeatedly cites normal right knee imaging as supporting her RFC, but it's unclear to the Court how the ALJ jumps from normal right knee imaging to the myriad of findings contained in her RFC, such as her ability to frequently crouch or lift a specific weight. Thus, the Court finds that a remand is necessary due to the evidentiary deficit created by the ALJ's rejection of Dr. Parker's opinion, Dr. Riegle's opinion, Dr. Eskonen's opinion, and Dr. Sands' opinion. *See, e.g., Suide*, 371 Fed. Appx. at 690 (remanding where ALJ created an evidentiary deficit when the ALJ rejected treating physician's opinion and then made an RFC determination without supporting medical evidence).

On remand, the ALJ should first analyze, in greater depth, whether each medical expert's opinion on Ms. Keller's physical limitations is persuasive or unpersuasive.[1] Specifically, the ALJ should look to the factors set forth under 20 C.F.R. § 404.1520c and explain how the other portions of the record conflict with each expert's opinion. After doing this, if the ALJ still concludes that these medical expert's opinions are all generally unpersuasive, the ALJ must fill in the "evidentiary deficit either by seeking further information from [the medical experts] or [by] obtaining the opinions of [another] independent examining physician or medical expert." *Daniels v. Astrue*, 854 F. Supp. 2d 513, 523 (N.D. Ill. 2012).

**E.     Conclusion**

On the basis of the foregoing, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: May 16, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court

---

[1] The Court notes that this does not necessarily include Dr. Hal Dickson, who opined on plaintiff's headaches, which this decision does not address.

13